IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:11CR168 |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS AND |
| ) | |
| JULIO CRUZ-PALACIOS, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Julio Cruz-Palacios (Cruz-Palacios) (Filing No. 15). Cruz-Palacios is charged in the Indictment with aggravated identity theft (Count I) in violation of 18 U.S.C. § 1028A, use of an immigration identification document not lawfully issued to him (Count II) in violation of 18 U.S.C. § 1546(b), the false claim of U.S. citizenship (Count III) in violation of 18 U.S.C. § 911, and the false representation of a Social Security number (Count IV) in violation of 42 U.S.C. § 408(a)(7)(B). Cruz-Palacios seeks to suppress any statements made to deportation officers of the U.S. Immigration and Customs Enforcement (ICE) on April 21, 2011.

An evidentiary hearing was held on Cruz-Palacios' motion on July 11, 2011. Cruz-Palacios was present for the hearing along with his counsel, First Assistant Federal Public Defender Shannon P. O'Connor. The United States was represented by Special Assistant U.S. Attorney Christopher L. Ferretti. During the hearing, the court heard the testimony of ICE Deportation Officer Patrick Burns (Officer Burns). A transcript (TR.) of the hearing was prepared and filed on July 18, 2011 (Filing No. 24).

**FINDINGS OF FACT**

On April 21, 2011, ICE Deportation Officers Burns and Jason Meyen drove to Behlen Manufacturing Co., a metal fabricating plant in Columbus, Nebraska, with an administrative warrant looking for an immigration fugitive (not Cruz-Palacios) (TR. 3-4; 11). The deportation officers showed a picture of the wanted fugitive to Behlen's management and were unable to locate the fugitive at the plant (TR. 4-5). As the deportation officers

were about to leave, Behlen management personnel asked the deportation officers to look at questionable I-9s of some Behlen employees (TR. 5). Behlen had questions about a group of employees who used Missouri driver's licenses as identification together with Social Security numbers which were issued in Puerto Rico (TR. 5). Behlen asked the deportation officers to go over the I-9s and use the officer's expertise to determine if the employees were in the United States illegally or using someone else's identification (TR. 5). The deportation officers were given a stack of documents (I-9s and copies of Social Security cards and other IDs such as driver's licenses) for about fifteen to twenty employees (TR. 6). The deportation officers agreed to help Behlen in their due diligence and examined the documents (TR. 6). The deportation officers made a telephone call back to their office in Omaha and found out that nobody with the particular Social Security numbers listed ever lived in Nebraska or Missouri (TR. 6). Previously, the deportation officers had been in contact with the Missouri DMV who had been concerned with the numerous requests for Missouri IDs which were easily procured in Missouri (TR. 7). While the deportation officers had concerns about several of the employees, the only employee available was one using the name Guadalupe Rodriguez (TR. 7-8). Guadalupe Rodriguez used a Missouri ID on his I-9 and the Social Security number he used was one not assigned to a person from Nebraska or Missouri (TR. 7). The deportation officers asked to speak with Guadalupe Rodriguez (TR. 8).

  One of the supervisors at Behlen went to the work floor and brought the defendant back to a Human Resources office at Behlen (TR. 9). The deportation officers were dressed in civilian clothing and did not have their firearms visible (TR. 9). The office had windows, two desks with computers, and measured about ten by twelve feet (TR. 21). Once the supervisor left the room, the deportation officers asked the defendant his real name and where he was from (TR. 10). Officer Burns, who was practiced in Spanish due to classes and several years of work on the U.S.-Mexico border, spoke to Cruz-Palacios in Spanish (TR. 15-17). The defendant said his name was Julio Cruz-Palacios and he presented a Guatemalan consulate card in that name (TR. 10). The deportation officers asked if Cruz-Palacios had been in any immigration proceedings before (TR. 10). Cruz-Palacios indicated he was, and the deportation officers checked the immigration system

and found Cruz-Palacios was trying to claim some immigration benefit (TR.11). At that point, the deportation officers called Omaha for the ICE office to e-mail them a *Miranda* form and some other forms (TR. 11). After the forms arrived by e-mail and after being advised of his *Miranda* rights, Cruz-Palacios agreed to talk with the deportation officers and was cooperative (TR. 12). Cruz-Palacios made various statements about how he used the documents and answered various other questions about his immigration (TR. 13). Cruz-Palacios agreed to take the deportation officers to his house where various documents were obtained (TR. 13). Thereafter, Cruz-Palacios was taken to the ICE processing station in Omaha where he was processed on an immigration charge (TR. 14).

## LEGAL ANALYSIS

Cruz-Palacios makes a pro forma argument that he did not receive proper *Miranda* warnings before he was questioned by the deportation officers at Behlen Manufacturing Co. in Columbus, Nebraska, on April 21, 2011.

The record is clear that Cruz-Palacios was not a target of the deportation officers when they drove to Columbus, Nebraska, with an administrative ICE warrant for another individual. Contact occurred with Cruz-Palacios only after Behlen Manufacturing personnel requested the deportation officers' assistance in reviewing the I-9s of some of their employees about whom they had suspicions. Upon review of the documents provided, several employees' I-9s stood out, but only one employee was present on the work floor, Guadalupe Rodriguez. The deportation officers met with Guadalupe Rodriguez and asked his real name and where he was from. The defendant immediately stated his name was Julio Cruz-Palacios and presented a Guatemalan consulate card in that name and gave some information on his immigration status. Immigration officers have the authority to interrogate any alien regarding his right to be in the United States. 8 U.S.C. § 1357(a). 8 C.F.R. § 287.8(b)(3) permits such immigration officers to interrogate and detain a suspected alien without amounting to an arrest. *United States v. Brigmoni-Ponce*, 422 U.S. 873, 884 (1975). As soon as the deportation officers determined that Cruz-Palacios may have committed a criminal offense, the deportation officers advised Cruz-Palacios of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). There is no dispute that

Cruz-Palacios understood his rights, waived them, and cooperated with the deportation officers.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON  that:**

Julio Cruz-Palacios' motion to suppress (Filing No. 15) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 26th day of July, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

[*]This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.